Argued and submitted June 24, affirmed as modified July 27, 1981

In the Matter of the Marriage of

VAN VLECK,
*Appellant,*
*and*
VAN VLECK,
*Respondent.*

(No. 37714, CA 19486)

631 P2d 836

Allyn E. Brown, Newberg, argued the cause and filed the brief for appellant.

Patrick J. Furrer, Tigard, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

## ROBERTS, J.

In this dissolution case wife appeals from that portion of the decree providing that husband and wife shall own the family residence as tenants in common until 1989 and establishing certain obligations of the parties with respect to the property. The language of the decree is as follows:

"5. Title to the real property shall be vested in petitioner [wife] and respondent [husband] as tenants in common. Petitioner shall have the exclusive use and occupancy of the real property until the 15th day of January, 1989. During said period of time petitioner shall at her expense keep the improvements situate on the property insured against loss by fire or other casualty in an amount equal to the insurable values thereof with loss payable under the policy or policies of insurance to be in favor of petitioner, respondent, the U. S. National Bank of Oregon, and the Tektronix Credit Union as their respective interests may appear. Additionally, during said period of time, petitioner shall pay and be responsible for payments upon the U. S. National Bank and Tektronix Credit Union mortgages as the same fall due and the ad valorem taxes levied upon and assessed against the real premises. Any other charge imposed upon the property by governmental authority together with the reasonable and necesary cost of repairing termite damage, carpenter ant damage or structural rot damage shall be the joint obligation of the parties. Should either of the parties pay any amount in excess of one-half of any such charge or cost that party shall have and recover from the other party the excess amount so paid together with interest thereon at the rate of 9 percent per annum of and from the date of payment.

"On and after the 15th day of January, 1989, or the date upon which petitioner may remarry, or the date of the death of petitioner, or the date on which petitioner shall cease to occupy said real premises as a home, whichever event shall first occur, said real property shall be offered for sale, upon sale, the net proceeds remaining shall be divided equally between the parties after payment of the mortgages (above-noted), any lien or charge which may be the joint obligation of the parties, and the cost of sale. Be it provided, however, that on or before the date upon which said real property must be offered for sale, as next immediately above provided, petitioner may elect to purchase respondent's interest in said real property and pay over to

respondent within 60 days of said election an amount equal to that which respondent would have received from the sale of the property at its then fair market value. In the event the parties cannot agree as to the fair market value of said real property then each party shall appoint a qualified appraiser and the two appraisers so appointed shall appoint a third and the decision of any two of said appraisers as to the fair market value of the real property shall be binding on the parties. For the purpose of this provision petitioner shall be deemed to have remarried at any time she enters into a husband and wife relationship with another man without benefit of marital ceremony."

Wife also appeals from the failure of the trial court to award her attorney fees, and she asks this court to award attorney fees on the appeal.

■      Wife argues that the tenancy in common entangles the financial affairs of husband and wife far into the future, that husband's demonstrated hostility and lack of cooperation make any joint endeavor ill-advised, that as tenants in common husband would unfairly benefit from wife's financial efforts, and that wife cannot make other payments also required by the decree without refinancing the property, which she cannot do with only a one-half interest. We agree that the facts of this case point to a strong potential for continuing conflict between husband and wife if it is necessary for them to communicate regarding the property.[1] We also agree that requiring wife to pay the mortgage, insurance and taxes for nine years, and then requiring an equal division of equity between the parties would give husband a return on an investment without any required contribution during the nine years.[2] For these reasons we modifiy the decree.

---

[1] On this issue we point to the fact that before the show cause hearing husband removed from the home major appliances, the kitchen sink, electrical fixtures, window screens and numerous household items which made the house uninhabitable for the wife and three minor children, one of whom was an infant at the time. At the show cause hearing the court ordered husband to return all the items. He failed to do so, was held in contempt by the court and was sentenced to six months in jail. He was released after one day, following his apology to the court, but at the time of trial there were still many items that had not been returned to wife.

[2] Wife did not seek or receive spousal support. She is employed and in 1979 received an annual income less than half that of husband, specifically, $12,408 and $26,463 respectively. At the time of trial husband had experienced an industrial injury and was concerned about his employment in construction work because of economic conditions.

The trial court may have treated the property as it did because of the differences of opinion between the parties as to its value and the lack of other evidence establishing the value. The evidence presented by wife was that the property had been appraised at $30,900 two years before trial. She estimated its present value to be $44,000 to $45,000. Husband testified that because the home had undergone extensive remodeling, some of which had not been completed at time of trial, its value would be $60,000 when finished. Husband is a carpenter and did the remodeling work himself with some assistance from friends who are also carpenters. Husband testified that if the house were sold for $60,000, a split of the equity would net each party $12,000 and that he would prefer that because "I would like to get started on my own [home]." There was no dispute that there were two mortgages on the home, one for $20,560 and one for $5,800. There also was no dispute that the parties owed three years taxes on the property in a total amount of $1,191. Wife testified that the home is in need of termite control work, which would cost $2,800; husband questioned the need for the work, but he conceded it was possible the work is necessary and that it could cost that amount.

The lack of evidence as to the value of the house is troublesome, but because of the need to disentangle these parties, *Babb and Babb,* 30 Or App 581, 567 P2d 599, *rev den* (1977),[3] we have taken the figures presented by husband and wife and reconciled the differences in order to reach the amount to be awarded husband as a judgment. Taking husband's high figure of $60,000 and subtracting the mortgages, the delinquent taxes and the cost of the termite control work, the remaining equity would be $29,649, or $14,824.50 for each party. Taking wife's lowest figure of $44,000, the equity, after subtracting the above items, would be $13,649 or $6,824.50 for each party. While not eager to play the role of Solomon, we find the fairest alternative in this case is to average the two figures and make an award accordingly. Therefore, wife, as custodial

---

[3] We have also said that even in situations where the value of real properties may be increased by joint management, where the parties are hostile to each other, it is best to divide the property completely. *Adams and Adams,* 22 Or App 287, 538 P2d 954 (1975).

parent, is awarded the home and husband is awarded a judgment on the property in the amount of $10,824.50, plus interest at 9 percent. This judgment is to be paid to husband on or before five years from the date of the decree, at the time the property is sold, upon wife's death, or when wife vacates the premises, whichever occurs first.[4]

■    With regard to the failure of the court to award wife attorney fees, we agree that the behavior of husband unnecessarily extended the litigation in this case and the court should have taken that into consideration. *See Hinsdale and Hinsdale,* 20 or App 638, 532 P2d 1137 (1975). Consequently, we modify the decree of dissolution by awarding to wife $750 for attorney fees.

Affirmed as modified; costs to appellant.

---

[4] Wife requested that the judgment not be payable until the last child reaches the age of majority, however, husband should not be required to wait so long to realize his interest in the home. Wife presumably will be able to refinance the home in order to pay the judgment, and five years will provide her with the time necessary to plan for that financial obligation.